**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**IPCO HOSPITAL SUPPLY CO., DENTAL PROSTHETICS DIVISION, Defendant.**

**No. 81 Civ. 5881 (WK).**

United States District Court, S.D. New York.

June 23, 1983.

As Amended June 27, 1983.

Leslie L. Payton, Senior Trial Atty., New York Dist. Office, New York City, for plaintiff.

Russell H. Gardner, Wolf, Pokempner & Hillman, Baltimore, Md., for defendant.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

In this civil rights case prosecuted by the Equal Employment Opportunity Commission ("EEOC") it is clear that one Yolanda Garcia, a long-time employee of the defendant, was Black and was fired. There is, however, no scintilla of evidence that race had anything to do with her termination. On the contrary, Ms. Garcia was terminated simply because she flatly refused to accept orders from a new manager who had been assigned to the task of trying to re-organize one of the defendant's unprofitable divisions. After having dismissed the case, the Court suggested that a motion for counsel fees might be in order. Some time after lapse of the plaintiff's time to appeal the judgment of dismissal, the defendant followed the Court's suggestion. Its motion for counsel fees is now before us.

In *Carrion v. Yeshiva University* (S.D.N.Y.1975) 397 F.Supp. 852, *aff'd* (2d Cir.1976) 535 F.2d 722, we observed:

> . . . [D]iscretion should be sparingly exercised in awarding attorney's fees and taxing costs against a Title VII plaintiff, as the entire legislative scheme embodied in that Title is to encourage persons aggrieved on racial grounds to come into court.

Although, in light of the legislative scheme, caution should also be exercised in awarding fees when the EEOC—rather than a private person—undertakes the burden of prosecution, somewhat different considerations then come into play. Where an aggrieved individual brings suit a court should recognize—and give consideration to—the fact that members of a minority which has historically been subject to discrimination may well have their judgment affected by the history of their group, and perceive racial animus where none exists. A court should therefore be extremely cautious in charging such a person with bad faith. On the other hand, where an official agency decides to inject the power of government into a dispute between private persons, such agency should at least satisfy itself that the claim it is supporting is *bona fide*.

In the instant case, assuming *arguendo* that a technical *prima facie* case was established by the fact that Ms. Garcia was Black and replaced by a Caucasian[1], it was—as we noted in dismissing the complaint—obvious at the end of Ms. Garcia's *direct* testimony that her claim was spurious. The witnesses for the defense then established beyond doubt that the defendant's action in terminating Ms. Garcia was not only reasonable but was the only course open to it.

There was no need of a trial to prove these facts. The implausibility of Ms. Garcia's story should have been apparent on the agency's first encounter with her, *see* Transcript ("Tr.") at 406–07; and the defendant's good faith would have been evident to any competent investigator who took the trouble to interview the persons involved. There was, accordingly, no conceivable justification for invoking the power of government in support of Ms. Garcia and against this defendant.

The foregoing considerations provide a sufficient basis for an award of counsel fees. *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648; *Harbulak v. County of Suffolk* (2d Cir.1981) 654 F.2d 194. *See also EEOC v. Pierce Packing Co.* (9th Cir.1982) 669 F.2d 605; *EEOC v. First Alabama Bank* (5th Cir.1979) 595 F.2d 1050, 1056; *EEOC v. Union Camp Corp.* (W.D.Mich.1982) 536 F.Supp. 64; *Woods v. State of New York* (S.D.N.Y.1980) 494 F.Supp. 201 (Weinfeld, J.); *Fisher v. F.I.T.* (S.D.N.Y.1980) 491 F.Supp. 879. *Cf. Harris v. Group Health Ass'n, Inc.* (D.C.Cir.1981) 662 F.2d 869, 874 (fees on appeal).

---

1. In dismissing the complaint the Court opened its oral opinion with the statement:

    To start off with, it is perfectly clear the plaintiff has established a prima facie case. As the balance of the opinion indicates, this was, to put it mildly, an exaggeration. The "prima facie case" was assumed *arguendo*. Actually, the Commission's theory that Ms. Garcia had been replaced by a white person was shaky at best.

Moreover, any doubt as to the EEOC's lack of good faith would be dispelled by the circumstance that in the course of trial its counsel deliberately attempted to deceive the Court as to a material fact. It was one of the EEOC's contentions that *defendant* had shown bad faith by refusing to enter into settlement negotiations. Defendant's answer was that such negotiations would have been futile because Ms. Garcia had demanded that John Walby, the manager of her division, be fired before she would consider any other conditions. Ms. Garcia categorically and repeatedly denied having made any such demand. Ms. Garcia's credibility having thus been placed in issue, the defendant called a witness who testified that one Iris Quiles, an EEOC investigator, had told him that Ms. Garcia had, in fact, demanded that Walby be fired. *See* Tr. at 289. It was therefore apparent to the Court that either Ms. Garcia was—to counsel for the EEOC's actual knowledge—committing perjury, or that defendant's witnesses were doing so. The Court therefore instructed that Ms. Quiles be produced as a witness to resolve the question. Counsel for the EEOC—very reluctantly—agreed to do so. *See* Tr. at 351–2, 354.

Five days after counsel had thus agreed to produce Ms. Quiles for the express purpose of finding out whether or not Ms. Garcia had perjured herself, Ms. Quiles was placed on the stand. Her direct examination touched on a variety of subjects, but avoided the pointed issue. Indeed, counsel caused her to identify documents which he implicitly represented as being complete; and those documents made no reference to

any demand that Mr. Walby be fired. However, upon only brief *voir dire* it was established that the documents offered by counsel for the EEOC were incomplete in that they omitted a memorandum clearly indicating that Ms. Garcia had made precisely such a demand. Moreover, by the end of cross-examination Ms. Quiles had expressly conceded that Ms. Garcia had indeed "wanted Mr. Walby discharged." *See* Tr. at 381. The EEOC's submissions—in response to the instant motion for fees—purportedly explaining this extraordinary sequence of events have but confirmed the Court's impression that its counsel had, in bad faith, attempted to conceal from the Court his actual knowledge that he had presented a perjurious witness.[2]

For all the foregoing reasons defendant's motion for counsel fees is GRANTED. At oral argument on the instant application, counsel for the EEOC had not decided whether it wished to challenge the *amount* requested by defendant, should the application for fees be granted. Accordingly, on or before July 5, 1983 the EEOC shall notify the defendant and the Court of any intention it may have to challenge such amount, in which event the matter shall be referred to a Magistrate to hear and recommend.[3] Failing such notice, the defendant shall submit a proposed judgment on five days notice.

SO ORDERED.

**2.** At oral argument on the motion for fees and in the EEOC's memorandum in opposition, it is repeatedly asserted that the demand that Mr. Walby be fired could never have been the EEOC's position, it having no authority to make such a demand. This argument is silly. The sole purpose Ms. Quiles was called—upon the Court's insistence—was to determine whether Ms. Garcia was lying when she repeatedly swore that she had made no such demand. The issue was the witness' credibility, not the power or conduct of the Commission. There can, moreover, be no doubt that counsel for the EEOC was aware that the issue was credibility. In rejecting a suggestion that a trial day might be avoided by accepting prof-

fers of proof, the Court observed, "credibility is the issue, and you can't judge credibility with a proffer." *See* Tr. at 362.

**3.** We reiterate here what we had already stated in oral argument: if, upon reviewing the results of any proceedings before a Magistrate, the Court should decide that they were fruitless—*i.e.,* that they challenged the requested amount on no reasonable ground, or were interposed for delay or harassment—we will add counsel fees attributable to the proceedings before the Magistrate to any award that might otherwise be warranted.